ALICE A. HEATH, *Appellee,* v. THE BANKERS LIFE AS-
SOCIATION, of Des Moines, Iowa, *Appellant.*

No. 18,184.

#### HEADNOTE BY THE REPORTER.

LIFE INSURANCE—*Suicide—Conflicting Evidence.* In an action
by the beneficiary to recover the amount of a life insurance
policy where the only issue was as to whether the insured
committed suicide, and on conflicting evidence the jury found
for the plaintiff and the trial court approved the verdict, the
judgment thereon will not be disturbed.

Appeal from Smith district court. Opinion filed May
10, 1913. Affirmed.

*L. C. Uhl & Son,* of Smith Center, and *I. M. Earle,*
of Des Moines, Iowa, for the appellant; *E. P. Sample,*
of Osborne, of counsel.

*I. M. Mahin, F. W. Mahin, W. E. Mahin, A. W. Reli-
han,* all of Smith Center, and *J. T. Reed,* of San Diego,
Cal., for the appellee.

*Per Curiam:* Action by appellee to recover $2000 on
a policy of insurance issued by appellant on the life of
Marion R. Heath. The policy contained a provision
that if death occurred by suicide within two years,
whether sane or insane, the only liability of the insurer
would be the amount of premiums which had been paid.
His death did occur within that time and resulted from
a cutting of his throat. In the action the only substan-
tial controversy was whether or not Heath had taken
his own life. Testimony was offered of a motive and
circumstances strongly tending to show that he com-
mitted suicide, and on the other hand testimony that
he could not have inflicted the wound himself and that
within a few hours of his death two persons threatened
to kill him and that they had motives that might have
induced such an act. The jury returned a verdict in

favor of appellee and made a special finding that Heath did not take his own life. Was there testimony to sustain the verdict? On the day of his death Heath was arrested upon a charge that he had committed a rape upon a young woman in the community. She had been married but a few days and on the day of Heath's death told her husband of her relations with Heath. Her husband sent her to the home of her parents. When her father learned the facts he threatened to kill Heath and undertook to obtain a gun and ammunition for that purpose. His wife and a neighbor undertook to dissuade him from killing Heath, and afterwards he did file a complaint and cause Heath's arrest. When brought before the magistrate Heath stated that he was not guilty and desired to obtain a bond, and he was permitted to go, in charge of an officer, to find an attorney and obtain bail. Heath was taken to his home on his request, and there he informed his wife and mother of the cause of his arrest. After talking with them ten or fifteen minutes and telling them that he was not guilty and would fight the charge he lighted a cigar and, with the permission of the officer, went to a closet which stood about forty yards from the house. In from ten to fifteen minutes he came staggering from the closet, his throat cut from ear to ear, as deep on one side as on the other, the cut being through the esophagus and trachea and clear back to the spinal column. He died shortly afterwards. A razor was found on the seat of the closet alongside of his partly consumed cigar and a razor case was subsequently found in the yard within forty feet of the closet. There is testimony that Heath was searched when arrested and had no razor with him, also that he did not obtain a razor while he was in his own home. The testimony was that he owned but two razors and these were afterwards found in the accustomed place. The razor found in the closet had never been in the house. No one else was seen in or near the closet about the time of the

tragedy, but there was a hedge row extending to the closet and also trees and bushes near to it. The father of the young woman threatened to kill Heath and made some preparations towards carrying out the threat. Her husband was heard to utter a threat that he would "get him." There was opinion evidence by physicians that the wound from which Heath died was such as could not have been self inflicted. There was no substantial testimony tending to show that Heath was insane, and while there was a motive and reason that might have induced Heath to commit suicide and tended to show that he took his own life it can not be said, in view of all the circumstances of the case, that there was no testimony to sustain the approved finding that he did not take his own life.

In the absence of testimony showing insanity rulings of the court relating to that question are not material. The objections to rulings excluding testimony are not available, as the testimony was not produced on the motion for a new trial. (Civ. Code, § 307.) Objections were made to rulings in the instructions, but the case appears to have been fairly submitted to the jury and the special finding returned has rendered some of the rulings unimportant.

The judgment is affirmed.